<u>**NOT FOR PUBLICATION**</u>



```
FILED
JAMES J. WALDRON, CLERK

JULY 24, 2012

U.S. BANKRUPTCY COURT
NEWARK, N.J.

BY: s/ Ronnie Plasner, DEPUTY
```

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In Re:<br>**NEW JERSEY MOBILE DENTAL PRACTICE, P.A.,**<br>               Debtor. | Case No.:  05-17772  (DHS) |
| In Re:<br>**STEPHEN A. BEUKAS and SANDRA BEUKAS,**<br>               Debtors. | Case No.:  08-10463  (DHS) |
| **RAMA GVILDYS,**<br>               Plaintiff,<br>v.<br>**STEPHEN A. BEUKAS et al.,**<br>               Defendants. | Adv. No.:  10-02067  (DHS)<br><br>Judge:   Hon. Donald H. Steckroth |

<u>**OPINION**</u>

**APPEARANCES:**

**AGOSTINO & ASSOCIATES, P.C.**
Jeremy M. Klausner, Esq.
14 Washington Place
Hackensack, New Jersey 07601
*Attorneys for Plaintiff*

**DAMIANO M. FRACASSO, ATTORNEY AT LAW**
Damiano M. Fracasso, Esq.
500 International Drive North
Suite 155
Mount Olive, New Jersey 07828
*Attorney for Defendants*

**THE HONORABLE DONALD H. STECKROTH, BANKRUPTCY JUDGE**

Before the Court is a motion for summary judgment filed by Plaintiff Rama Gvildys ("Gvildys") and a cross-motion to dismiss filed by Debtor-Defendants Stephen ("Dr. Beukas") and Sandra Beukas ("Mrs. Beukas") (jointly, the "Beukases"). Gvildys seeks denial of the Beukases' discharge pursuant to sections 727(a)(3), (a)(4)(A), (a)(5), and (a)(7) of the Bankruptcy Code. The Beukases cross-move to dismiss the complaint. Gvildys alleges that Dr. Beukas opened a bank account in the name of a non-operating corporation, Mobile Dental Practice, P.C. ("Mobile Dental"), shortly before filing a chapter 11 petition for his business, New Jersey Mobile Dental Practice, P.A. ("NJMDP"). Dr. Beukas allegedly used the Mobile Dental accounts for personal expenses and, over a four-year period, deposited in excess of $2.7 million into the accounts, some funds of which belonged to NJMDP. Gvildys alleges that the Beukases failed to: (i) disclose this activity on their monthly operating reports ("MORs"); (ii) keep or preserve records regarding the account; and (iii) explain the loss of assets through use of the account. Gvildys argues that those failures to report and disclose, together with the misuse of NJMDP funds, require denial of the Beukases' discharge under section 727(a).

In defense, the Beukases appear to argue, among other things, that: (i) the MORs were professionally prepared; (ii) the Mobile Dental account belongs to a separate legal entity, thus disclosure of its activity was not necessarily required; (iii) Dr. Beukas was never asked to explain the loss of any assets; (iv) discovery has yet to take place; and (v) Mrs. Beukas was not involved in any of the alleged wrongdoing. The remainder of the Beukases' defense rests largely on evidentiary objections, and specifically, that Gvildys relies on hearsay or otherwise inadmissible evidence to support her claims.

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(J). Venue is proper under 28 U.S.C. § 1409(a). The following shall constitute the Court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

**PROCEDURAL HISTORY AND STATEMENT OF FACTS**

**I.     Procedural History**

In March 2005, Dr. Beukas caused NJMDP to file its petition for relief under chapter 11 of the Bankruptcy Code. NJMDP's plan of reorganization was confirmed in January 2009. The case was subsequently closed.

The Beukases filed their individual joint petition for chapter 11 relief in January 2008. In August 2009, Barry R. Sharer was appointed as examiner ("Examiner"). Robert Wasserman was appointed as chapter 11 Trustee ("Trustee") in February 2010. In March 2010, the Examiner issued his report, which concluded that the Beukases could not demonstrate a feasible plan of

3

reorganization and thus, the case should be converted to chapter 7. (Cert. of Jeremy Klausner dated Nov. 18, 2011 ("Klausner Cert. I"), Ex. H at p.1) The case was converted to chapter 7 shortly thereafter. At the same time, the NJMDP case was reopened, converted to chapter 7, and the Trustee was appointed to administer NJMDP's estate.

In August 2010, Gvildys filed the instant complaint seeking denial of the Beukases' discharge. The Beukases filed an answer. More than one year later, Gvildys moved for summary judgment and the Beukases cross-moved to dismiss.

## II.     Plaintiff's Alleged Facts

Dr. Beukas formed Mobile Dental at some time during the years 2003 and 2004. (Klausner Cert. I, Ex. D at 102:19-103:1) Mobile Dental is wholly owned by Dr. Beukas. (*Id*. at 103:2-7) This entity was purportedly created for the purpose of treating certain diseases with select drugs in order to "track the progress of patients[.]" (*Id*. at 102:3-14) Gvildys, however, alleges that Mobile Dental never conducted any business. (Pl.'s Memo. in Supp. of Summ. J., p. 2) Dr. Beukas opened a checking account in the name of Mobile Dental in March 2005, shortly before he filed NJMDP's chapter 11 petition. (*Id*.) A second bank account was opened under Mobile Dental's name in July 2006. (*Id*.) Allegedly, the Beukases made regular deposits – including checks made payable to NJMDP – and withdrawals from the Mobile Dental accounts between March 2005 and August 2009. (*Id*.) According to account statements, in excess of $2.7 million was deposited into these accounts between 2005 and 2009. (*Id*. at p. 3)

Despite the fact that Mobile Dental was wholly owned by Dr. Beukas, and its bank accounts apparently used exclusively for personal expenses, neither the accounts nor the activity appeared on the Beukases' monthly operating reports during their bankruptcy proceedings ("MORs"). (*Id*. at p. 4)

The Trustee retained the accounting firm Bederson & Company, LLP ("Bederson") to assist in his investigation of the Beukases' finances. (*Id*. at p. 3) Bederson issued a report in April 2010 ("Bederson Report") containing various alleged admissions and other information regarding the Mobile Dental accounts:

- Dr. Beukas admitted that he set up the Mobile Dental accounts after NJMDP filed bankruptcy;
- Dr. Beukas admitted he deposited funds belonging to NJMDP into the Mobile Dental accounts;
- Dr. Beukas stated that he made proper entries into NJMDP's books and records, however, Bederson found substantial discrepancies in NJMDP's books;
- Dr. Beukas wrote more than $640,000 worth of checks to himself despite his representation that he had not written any checks to himself;

4

- deposits and expenditures from the Mobile Dental accounts did not appear on the Beukases' MORs; and
- the MORs did not provide "any meaningful information relating to the [Beukases'] operations and financial position."

(Klausner Cert. I, Ex. G at pp. 2-3)

Lastly, Gvildys notes that the Court appointed the Examiner. (Pl.'s Memo. in Supp. of Summ. J., p. 4) The Examiner issued a report ("Examiner's Report") stating, among other things, that the Beukases' MORs were "incomplete and of no use to me to understand the [Beukases'] finances." (*Id.*; Klausner Cert. I, Ex. H)

### III.    Defendants' Additional and Disputed Facts

The Beukases' MORs were prepared by a professional accounting firm, Smolin Lupin & Co., P.A. (Stephen Beukas's Suppl. Stmt. of Facts in Opp'n ("Dr. Beukas Cert."), ¶ 4) Dr. Beukas also says that: (1) he did not tell Bederson that he did not write checks to himself out of the Mobile Dental accounts; (2) he never failed to explain any loss of assets; (3) he never admitted that there are no books and records pertaining to the Mobile Dental accounts; and (4) he was never informed that his statements to Bederson were not protected under the Federal Rules of Evidence. (*Id.* at ¶¶ 9-14)  Finally, Dr. Beukas asserts that Mrs. Beukas was neither involved in nor did she have any knowledge of the facts and circumstances underlying Gvildys's allegations. (*Id.* at ¶¶ 5, 8; Sandra Beukas's Suppl. Stmt. of Facts in Opp'n, ¶¶ 2-5)

## DISCUSSION

### I.    Summary Judgment Standard

A court may grant summary judgment under Federal Rule of Civil Procedure 56(c), made applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7056, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.*  At the summary judgment stage, the role of the court "is not to weigh evidence, but to determine whether there is a genuine issue for trial." *Knauss v. Dwek*, 289 F. Supp. 2d 546, 549 (D.N.J. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  The court must construe facts and inferences in a light most favorable to the non-moving party. *See Am. Marine Rail NJ, LLC v. City of Bayonne*, 289 F. Supp. 2d 569, 578 (D.N.J. 2003) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986)).  "Only evidence admissible at trial may be used to test a summary judgment motion.  Thus, evidence whose foundation is deficient must be excluded from consideration." *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 471 (3d Cir. 1989) (citations omitted).

The moving party must make an initial showing that there is no genuine issue of material fact. *See Knauss*, 289 F. Supp. 2d at 549 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The burden then shifts to the non-moving party to "'make a showing sufficient to establish the existence of [every] element essential to the party's case, and on which that party will bear the burden of proof at trial.'" *Cardenas v. Massey*, 269 F.3d 251, 254-55 (3d Cir. 2001) (questioned on other grounds) (quoting *Celotex Corp.*, 477 U.S. at 322). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original). An issue of fact is "genuine" if a reasonable juror could return a verdict for the non-moving party. *See id.* at 248. Furthermore, a material fact is determined by the substantive law at issue. *See Crane v. Yurick*, 287 F. Supp. 2d 553, 556 (D.N.J. 2003) (citing *Anderson*, 477 U.S. at 248). A fact is "material" if it might affect the outcome of the suit under governing law. *Id.* Disputes over irrelevant or unnecessary facts are insufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 248 (citation omitted).

However, even if material facts remain disputed, summary judgment may be proper if, after all inferences are drawn in the non-moving party's favor, the moving party is entitled to judgment as a matter of law. *Id.* at 248-50. Such a judgment is appropriate "as a matter of law" when the non-moving party has failed to make an adequate showing on an essential element of his or her case, as to which he or she has the burden of proof. *See Celotex Corp.*, 477 U.S. at 322-23. When one party moves the court for summary judgment, Federal Rules of Civil Procedure 54(c) and 56, taken together, permit the court to enter summary judgment on behalf of the non-movant, even if the non-movant has not filed a cross-motion for summary judgment. *See Peiffer v. Lebanon Sch. Dist.*, 673 F. Supp. 147, 151-52 (M.D. Pa. 1987) (citation omitted). On the other hand, a court must deny a motion for summary judgment when a genuine issue of material fact remains to be tried, or where the moving party is not entitled to a judgment as a matter of law.

## II.    12(b)(6) Standard[1]

Federal Rule of Civil Procedure 12(b)(6) permits a party to seek dismissal of a complaint for failure to state a claim upon which relief may be granted. Federal Rule of Civil Procedure 8 provides that pleadings must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)). Upon considering a 12(b)(6) motion to dismiss, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff

---

[1] The Beukases failed to specify a standard for relief in their cross-motion to dismiss. It seems, however, that their cross-motion seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).

6

may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted). The factual allegations contained in the complaint "must be enough to raise the right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Furthermore, "[t]he allegations of the complaint . . . should 'plausibly suggest []' that the pleader is entitled to relief." *Wilkerson v. New Media Tech. Charter Sch. Inc.,* 522 F.3d 315, 322 (3d Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1966). The Supreme Court clarified the "plausibility" standard in *Ashcroft v. Iqbal* by holding that in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.*

When seeking denial of a debtor's discharge, a plaintiff must satisfy the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b), made applicable by Federal Rule of Bankruptcy Procedure 7009. *Kwasnik v. Permahos (In re Permahos)*, 2011 Bankr. Lexis 718, at *4 (Bankr. D.N.J. Feb. 24, 2011). Rule 9(b) provides that:

> [i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other condition of a person's mind may be alleged generally.

Fed. R. Civ. P. 9(b).

The heightened pleading requirement serves "to provide notice, not to test the factual allegations of the claim." *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 414 n.2 (3d. Cir. 2003). The requirement is generally deemed satisfied by allegations of date, place, time, and manner, or by "alternative means of injecting precision and some measure of substantiation into [the] allegations of fraud." *Seville Indus. Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 791 (3d Cir. 1984); *In re Rockefeller Ctr. Props. Secs. Litg.,* 311 F.3d 198, 217 (3d Cir. 2002) (answering the "who, what, when, where and how" questions will satisfy the 9(b) requirement). A person's state of mind, however, may be alleged generally. *Forman v. Salzano (In re Norvergence, Inc.)*, 405 B.R. 706, 726 (Bankr. D.N.J. 2009)

Rigid application of Rule 9(b) prior to discovery, however, has the potential to "permit sophisticated defrauders to successfully conceal the details of their fraud." *In re Craftmatic Secs. Litg.*, 890 F.2d 628, 645 (3d Cir. 1989) (quoting *Christidis v First Penn. Mortgage Trust*, 717 F.2d 96, 99-100 (3d Cir. 1983). Thus, courts may apply the Rule with some flexibility, especially where "factual information is peculiarly within [a] defendant's knowledge or control." *In re Norvergence*, 424 B.R. 663, 688 (Bankr. D.N.J. 2010) (quoting *Saporito v. Combustion Eng'g, Inc.* 843 F.2d 666, 674-75 (3d Cir. 1988), *vacated on other grounds by Combustion Eng'g, Inc. v. Saporito,* 489 U.S. 1049 (1989)). Bankruptcy courts, in particular, will often interpret Rule 9(b) liberally. *Id.* (citing *In re MacGregor Sporting Goods, Inc.*, 199 B.R. 502 (Bankr. D.N.J. 1995) (citation omitted). Nevertheless, the Rule does not permit plaintiffs to

7

"merely lump multiple defendants together but requires [the complaint to] . . . inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Id.*

### III.   Admissibility Issues[2]

Dr. Beukas objects to the evidence offered by Gvildys in support of her motion for summary judgment. Specifically, Dr. Beukas contests the admissibility of the MORs, the Mobile Dental account statements, the Examiner's Report, the Bederson Report, and copies of checks payable to NJMDP allegedly deposited in the Mobile Dental accounts. (Klausner Cert. I. Exs. E, F, G, and H) With respect to the Examiner's Report, Dr. Beukas argues that "it's not subject to cross examination . . . . it's not subject to any discovery. It's unsworn. It's . . . conclusory . . . . it's a net opinion . . . . nothing in that opinion supports the assertions that are made." (Hr'g Tr. dated Jan. 24, 2012, 9:18-10:4) Dr. Beukas also argues that the Bederson Report constitutes inadmissible hearsay. (Defs.' Responsive Stmt. of Facts, ¶ 21) Dr. Beukas makes similar arguments with respect to the Mobile Dental account statements and the allegedly misappropriated checks and further seems to argue that Gvildys fails to lay a proper foundation for the documents. (*See Id.* at ¶¶ 14-19) Gvildys counter-argues that the admissibility of the MORs is well settled under the law, the Mobile Dental account statements are admissible business records under Federal Rule of Evidence 803(6), and both reports are admissible under Federal Rule of Evidence 803(8).

Hearsay is a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *In re CGR Investors Ltd. P'ship*, 464 B.R. 678, 681 (Bankr. E.D. Pa. 2010) (citing F.R.E. 801(c)). Rule 805 provides that "[h]earsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule." F.R.E. 805. Moreover, certain out of court statements are not considered hearsay, for example, a "statement offered against an opposing party [that] was made by the party in an individual or representative capacity[,]" or a statement that "the party manifested that it adopted or believed to be true[.]" F.R.E. 801(d)(2)(A), (B). Further, there are a number of exceptions to the hearsay rule. At issue here are the business records and public records exceptions. Gvildys argues that both the Examiner's Report and the Bederson Report are admissible as public records under Federal Rule of Evidence 803(8), which provides:

> (8) *Public Records*. A record or statement of a public office if:
>   (A) it sets out:
>     (i) the office's activities;

---

[2] The parties did not, either in brief or at argument, present adequate support for their respective positions regarding the admissibility of evidence. The Court will not argue a case on behalf of any party. There is little authority on point. However, the Court feels that in light of the circumstances the following discussion represents a fair view and disposition of the evidentiary issues raised in this case.

8

      (ii) a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel; or
      (iii) in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation; and
   (B) neither the source of information nor other circumstances indicate a lack of trustworthiness.

F.R.E. 803(8).

  The reports, however, likely do not qualify for admission under Rule 803(8) as they are not "record[s] or statement[s] of a public office." *Id*. That the documents were previously filed on the docket does not necessarily render them admissible. Gvildys neither presents, nor is the Court able to locate, case law addressing the admissibility of an examiner's report, let alone a report generated by a trustee's professional, under this Rule. While bankruptcy courts "routinely consider and rely on the testimony and reports of examiners . . . . an examiner's report is . . . not intended to establish evidence." *In re Fibermark, Inc.*, 339 B.R. 321, 325 (Bankr. D. Vt. 2006) (citation omitted); s*ee In re Granite Broad. Corp.*, 369 B.R. 120, 129 (Bankr. S.D.N.Y. 2007) ("The Court recognizes . . . that the Examiner's conclusions are not based on a full factual record and are technically hearsay."). Though portions of the Examiner's Report are likely admissible, the portion relevant here largely recounts a discussion with Dr. Beukas's accountant regarding his lack of cooperation and inadequate record keeping. (Klausner Cert. I, Ex. H at pp. 4-5) This simply lacks the degree of reliability required by the rules of evidence and will not be admitted over objection at this stage. The Bederson Report is similarly inadmissible. Again, through proper channels, the Bederson Report may be admitted. However, in light of the objections made, the Court is not prepared to admit the report at this stage of the proceedings.[3]

  As for the Mobile Dental account statements, Gvildys argues that same are "clearly admissible" under the business records exception. Federal Rule of Evidence 803(6) provides that the following requirements be met in order for business records to be admissible:

   (6) *Records of a Regularly Conducted Activity*. A record of an act, event, condition, opinion, or diagnosis if:

---

[3] The Bederson Report references various statements allegedly made by Dr. Beukas. Dr. Beukas argues that any such statements are excluded under Federal Rule of Evidence 408. Rule 408, meant to encourage settlement of disputes, prohibits the introduction of evidence "obtained in the course of settlement negotiations offered to prove the validity or invalidity of a claim or its amount." *Stainton v. Tarantino*, 637 F. Supp. 1051, 1081 (E.D. Pa. 1986). There is nothing in the record to suggest that the statements were made in the course of settlement negotiations. Rather, it appears the statements were made during the course of the Trustee's investigation of the Beukases. On this record, the Court cannot conclude that Rule 408 applies. Instead, the alleged statements may be admissible as party-opponent admissions under Rule 801 and thus, such statements are not hearsay.

>    (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;
>    (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>    (C) making the record was a regular practice of that activity;
>    (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>    (E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

F.R.E. 803(6).

The Mobile Dental account statements appear to fit neatly within this exception.[4] However, the Rule requires that all conditions be "shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) . . . ." F.R.E. 803(6)(D). Here, Gvildys's attorney certifies that the Mobile Dental account statements "are copies of the statements of account for two checking accounts titled to Mobile Dental Practice, P.C." (Klausner Cert. I, ¶ 6)  This does not satisfy the Rule. Gvildys's counsel is neither the records' custodian nor "another qualified witness." *See CGR Investors*, 464 B.R. at 682 n.5 ("While the Third Circuit construes the term 'other qualified witness' . . . broadly, the testimony must be from someone familiar with the record keeping system who has the ability to attest to the records' foundation.").

Still, "[c]ourts have recognized that [] foundation for admissibility may at times be predicated on judicial notice of the nature of the business and the nature of the records as observed by the court, particularly in the case of bank and similar statements." *United States v. Peninger*, 456 Fed. Appx. 214, 217-18 (4th Cir. 2011) (quoting *Federal Deposit Ins. Corp. v. Staudinger*, 797 F.2d 908, 910 (10th Cir. 1986)) (internal quotation marks omitted); *see United States v. Garm (In re Garm)*, 114 B.R. 414, 417 (Bankr. M.D. Pa. 1990) (same); 5 WEINSTEIN'S EVIDENCE ¶ 803.08[8][c], at 803-90 (Jack B. Weinstein & Margaret A. Berger, 2nd ed. 2012) (same); *see also generally United States v. Johnson*, 971 F.2d 562, 571 (10th Cir. 1992) (admitting evidence under Rule 803(6) where the "record [was] replete with circumstances demonstrating the trustworthiness of the documents."). Bank account statements are frequently presented to the Court. Seldom is such evidence objected to. Moreover, Dr. Beukas makes no

---

[4] Though not asserted here, the Mobile Dental account statements may also be considered records of regularly conducted activity and thus, self-authenticating, under Federal Rule of Evidence 902(11). *See* F.R.E. 902(11).

argument that would tend to undermine the trustworthiness or authenticity of the Mobile Dental account statements.  Thus, the Mobile Dental account statements are admissible.

Even if the business records exception is unavailable, the Mobile Dental account statements may nevertheless be admitted under Federal Rule of Evidence 807, the residual exception, which provides that:

> [u]nder the following circumstances, a hearsay statement is not excluded by the rule against hearsay even if the statement is not specifically covered by a hearsay exception in Rule 803 or 804:
>
> (1) the statement has equivalent circumstantial guarantees of trustworthiness;
> (2) it is offered as evidence of a material fact;
> (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and
> (4) admitting it will best serve the purposes of these rules and the interests of justice.
>
> (b) Notice. The statement is admissible only if, before the trial or hearing, the proponent gives an adverse party reasonable notice of the intent to offer the statement and its particulars, including the declarant's name and address, so that the party has a fair opportunity to meet it.

F.R.E. 807.

The Mobile Dental account statements fall within the confines of Rule 807.  The statements are trustworthy, highly material, and the only documentary evidence before the Court concerning the activity of the Mobile Dental accounts.  *See generally Bayonne Med. Ctr. v. Bayonne/Omni Dev., LLC (In re Bayonne Med. Ctr.)*, 2011 Bankr. Lexis 4748, at *45-46 (Bankr. D.N.J. Nov. 1, 2011) (stating that Rule 807 applied where a litigant's "statement went to a material fact . . . [it was] high[ly] probative . . . and, the statement provide[d] the best view of historic events which [were] at the center of th[e] litigation.").  Further, Dr. Beukas had sufficient notice that Gvildys intended to offer the statements to the Court.  *See generally United States v. Evans*, 572 F.2d 455, 489 (5th Cir. 1978) ("The notice requirement of Rule [807] is intended to afford the party against whom the statement is offered sufficient opportunity to determine its trustworthiness in order to provide a fair opportunity to meet the statement.  It must be interpreted flexibly, with this underlying policy in mind.").  While this Circuit has interpreted Rule 807's notice requirement to include notice of a party's intent to rely on Rule 807, Gvildys's motion was filed on November 18, 2011 and argued on January 24, 2012.  *See Kirk v. Raymark Indus., Inc.*, 61 F.3d 147, 167 (3d Cir. 1995) (finding "that the proponent must give notice of the hearsay statement itself as well as the proponent's intention specifically to rely on the rule as a

11

grounds for admissibility of the hearsay statement."). Despite ample notice, Dr. Beukas presents no evidence or argument that would undermine the trustworthiness, authenticity, or accuracy of the offered evidence. Though true that Congress intended the residual exception to be used only in rare circumstances, its application here is appropriate, to the extent Rule 803(6) does not apply. *See generally Cook v. Miss. Dep't of Human Servs.*, 108 Fed. Appx. 852, 856 (5th Cir. 2004); *see also United States v. Farley*, 992 F.2d 1122, 1126 (10th Cir. 1993) (stating the exception should be used "in extraordinary circumstances where the court is satisfied that the evidence offers guarantees of trustworthiness and is material, probative and necessary in the interest of justice."); *Peninger*, 456 Fed. Appx. at 218 (noting that "courts have found that erroneous Rule 803(6) rulings are harmless when the evidence was otherwise admissible under Rule 807[.]").

As noted by the court in *Johnson*, "[t]here is simply no dispute that the transactions shown by the [account statements] took place as recorded." 971 F.2d at 571. In this case, the interests of justice, fairness, and efficiency are not served by a hyper-technical interpretation and application of the rules. Reliable evidence that a fraud has been committed on this Court will not be ignored. The Mobile Dental account statements are admissible.

**IV.     Section 727(a)(3): Failure to Keep or Preserve Books and Records**

Providing debtors with a fresh start is a core objective of the Bankruptcy Code. A section 727 discharge lies at the heart of the Bankruptcy Code's fresh start provisions. *Rosen v. Bezner*, 996 F.2d 1527, 1531 (3d Cir. 1993); *see also* H.R. Rep. No. 595, 95th Cong. 1st Sess. 384 (1977). Denial of a debtor's discharge is "an extreme step" not taken lightly by bankruptcy courts. *Bezner*, 996 F.2d at 1531. Courts will deny a discharge only in extreme circumstances and will construe the exceptions to discharge strictly against creditors and liberally in favor of debtors. *Ins. Co. of N. Am. v. Cohn (In re Cohn)*, 54 F.3d 1108, 1113 (3d Cir. 1995); *Stapleton v. Yanni (In re Yanni)*, 354 B.R. 708, 711 (Bankr. E.D. Pa. 2006) (stating that a denial of discharge is "by far the most severe penalty a Chapter 7 debtor can receive in the life of a bankruptcy case"). Still, a discharge is a privilege reserved for the "honest but unfortunate debtor." *Grogan v. Garner*, 498 U.S. 279, 286-87 (1991); *see also Wachovia Bank, N.A. v. Spitko (In re Spitko)*, 357 B.R. 272, 298 (Bankr. E.D. Pa. 2006) (a discharge is "a privilege, not a right, and should only inure to the benefit of the honest debtor"). "Thus, where a debtor has been dishonest in his dealings with the court or his creditors, it may be appropriate to deny his discharge, notwithstanding that an underlying goal of federal bankruptcy law is to provide a debtor with a fresh start." *Id*.

To receive a discharge, a debtor must provide a complete and accurate picture of his prepetition financial affairs. *Fox v. Stumpf (In re Stumpf)*, 2011 Bankr. Lexis 517, *16-17 (Bankr. M.D. Pa. Feb. 9, 2011) (citing *Meridian Bank v. Alten*, 958 F.2d 1226 (3d Cir. 1992)). Indeed, "[c]omplete disclosure is in every case a condition precedent to the granting of the discharge. . . ." *Id*. at 1230.

Section 727(a)(3) provides for a denial of discharge where:

> the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

11 U.S.C. § 727(a)(3).

The purpose of this section is to "give creditors and the bankruptcy court complete and accurate information concerning the status of the debtor's affairs and to test the completeness of the disclosure requisite to a discharge." *Meridian Bank*, 958 F.2d at 1230. "The statute also ensures that the trustee and creditors are supplied with dependable information on which they can rely in tracing a debtor's financial history." *Id*.

To set forth a claim under section 727(a)(3), the party objecting to discharge must establish by a preponderance of the evidence that "(1) the debtor failed to maintain and preserve records and (2) such failure makes it impossible to ascertain the debtor's financial condition and material business transactions." *Id*. at 1232 (citing *In re Decker*, 595 F.2d 185, 187 (3d Cir. 1979)). If the party objecting to discharge satisfies these requirements, the burden shifts to the debtor to demonstrate that the deficiency is justified. *Spitko*, 357 B.R. at 306 (citing *Meridian Bank*, 958 F.2d at 1233). Whether a deficiency is justified in turn "depends largely on what a normal, reasonable person would do under similar circumstances." *Id*. at 1231. This inquiry is made on a "case-by-case basis" and includes such considerations as "the education, experience, and sophistication of the debtor; the volume of the debtor's business; the complexity of the debtor's business; the amount of credit extended to [the] debtor in his business; and any other circumstances that should be considered in the interest of justice." *Id*. Unlike section 727(a)(2)(A), "[i]ntent to defraud or to conceal the debtor's financial condition is not a requisite element to be specifically proved for a denial of discharge under section 727(a)(3)." *Sherwood Fine Art, Inc. v. Burrik (In re Burrik)*, 459 B.R. 881, 891 (Bankr. W.D. Pa. 2011) (quoting 6 COLLIER ON BANKRUPTCY, ¶ 727.03[3][d] at 727-35 (Bender 2010)).

A debtor who is a sophisticated or experienced business person will be held to a greater degree of accountability under section 727(a)(3). *See Meridian Bank*, 958 F.2d at 1231 (finding that debtor was sophisticated because he was an experienced attorney who "knew the value of maintaining adequate records"); *Conde*, 386 B.R. at 582 (finding debtor to be sophisticated where he attended college, was a certified machine tool sales engineer, and was involved in designing automated manufacturing processes). However, the records that a debtor must keep for purposes of section 727(a)(3) "need not [be] impeccable." *Id*. On the contrary, "such records need only adequately identify a debtor's pre-petition financial dealings so as to make possible [an] intelligent inquiry concerning the transactions." *Id.* at 582-84 (denying discharge under section 727(a)(3) where debtors "produced nothing from which one might be able to reconstruct

13

their pre-petition financial condition and business transactions" and "failed to produce anything at trial that might explain or justify their failure to do so").

In this case, Dr. Beukas is charged with failing to provide adequate books and records. Dr. Beukas is a highly sophisticated and educated debtor and thus, he is held to a higher standard under this subsection. Dr. Beukas argues that "you cannot accuse someone of 'fail[ing] to keep or preserve recorded information' if you accuse them of never recording that information in the first place." (Defs.' Br. in Opp'n, p. 4) As discussed, a duty of full disclosure is imposed upon the debtor. The record before the Court demonstrates substantial pre- and post-petition transactions, primarily through the use of the Mobile Dental accounts. Gvildys has met her burden. Though the Mobile Dental account statements show a variety of retail and commercial purchases, they also reveal substantial withdrawals and transfers with little or no detail. (Klausner Cert. I, Ex. E) Nevertheless, Dr. Beukas declines to submit documentation or records of any kind through which these transactions can be reconstructed. This is unacceptable given Dr. Beukas's education and experience. Clearly, sufficient grounds for denial of Dr. Beukas's discharge under section 727(a)(3) exist. Nevertheless, the Court will continue to analyze the claims brought under sections 727(a)(5) and (a)(4)(A).

## V.     Section 727(a)(5): Failure to Explain Loss of Assets

Section 727(a)(5) provides that "[t]he court shall grant the debtor a discharge, unless the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities[.]" 11 U.S.C. § 727(a)(5). This section, together with section 727(a)(3), impose a duty upon the debtor to "make full disclosure of his finances." *Carter Eng'g Co. v. Carter (In re Carter)*, 236 B.R. 173, 180 (Bankr. E.D. Pa. 1999). Under section 727(a)(5), the plaintiff has the initial burden of "introduc[ing] some evidence of the disappearance of substantial assets, the burden [then] shifts to the debtor to explain satisfactorily [any] losses or deficiencies." *Sherwood Fine Art, Inc. v. Burrik (In re Burrik)*, 459 B.R. 881, 895 (Bankr. W.D. Pa. 2011) (quoting *In re Potter*, 88 B.R. 843, 849 (Bankr. N.D. Ill. 1988)).

It is within the Court's sound discretion to determine whether the debtor's explanation is satisfactory. *PNC Bank v. Buzzelli (In re Buzzelli)*, 246 B.R. 75, 117 (Bankr. W.D. Pa. 2000). Simply put, "[a] 'satisfactory' explanation is one that convinces the bankruptcy judge." *First Am. Title Ins. Co. v. Coven (In re Coven)*, 2007 U.S. Dist. Lexis 28181, at *21 (D.N.J. Apr. 17, 2007). "Although the explanation need not be far-reaching and comprehensive, it must consist of more than a 'vague, indefinite, and uncorroborated hodgepodge of financial transactions.'" *Spitko*, 357 B.R. at 319; see *Buzzelli*, 246 B.R. at 117 ("[a] creditor is not required to rely on a debtor's [mere] statement that he no longer has certain assets"). Importantly, a debtor is not permitted to "defer an explanation until trial when the disposition of their assets has been placed in issue at summary judgment." *Spiridigliozzi v. Grammenos (In re Grammenos)*, 2012 Bankr. Lexis 1267, at *35 (Bankr. D.N.J. Mar. 23, 2012) (citing *Sonders v. Mezvinsky (In re Mezvinsky)*, 265 B.R. 681, 693-94 (Bankr. E.D. Pa. 2001) ("Holding back evidence until trial is not an option where the moving party has met its burden under Rule 56.")).

14

Here, too, as with section 727(a)(3), "[t]here is no requirement that a debtor act fraudulently or intentionally in order for a plaintiff to sustain objections to discharge . . . ." *Burrik*, 459 B.R. at 896 (quoting *Buzzelli*, 246 B.R. at 116).

Dr. Beukas states, among other things, that he has "never failed to explain any loss of assets or deficiency of assets to meet [his] liabilities . . . ." (Beukas Cert., ¶ 10) As noted, however, it is incumbent upon a debtor to make full disclosure of his finances. The dissipation of the Beukases' assets through the Mobile Dental accounts is directly at issue and is supported by reliable evidence. As discussed, the evidence demonstrates that substantial sums were withdrawn from the Mobile Dental accounts. Dr. Beukas, however, has not, either in his papers or at argument, offered any explanation concerning his use of the Mobile Dental accounts. Thus, Dr. Beukas shall be denied a discharge pursuant to section 727(a)(5).

## VI.    Section727(a)(4)(A): False Statement or Oath

To deny a discharge under section 727(a)(4)(A), a party must prove by a preponderance of the evidence that: (1) the defendant made a statement under oath; (2) the statement was false; (3) the defendant knew the statement was false; (4) the defendant made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case. *E.g.*, *Spitko*, 357 B.R. at 312; *Scimeca v. Umanoff*, 169 B.R. 536, 541 (D.N.J. 1993).

### A.    Statements Under Oath

Federal Rule of Bankruptcy Procedure 1008 provides that "[a]ll petitions, lists, schedules, statements, and amendments thereto shall be verified or contain an unsworn declaration as provided in 28 U.S.C. § 1746." Fed. R. Bankr. P. 1008. Section 1746 of the United States Code states that "unsworn declarations are equivalent to a verification under oath if the declarant states in writing that the information is true under penalty of perjury." 28 U.S.C. § 1746. An "oath" under section 727(a)(4)(A) of the Bankruptcy Code therefore includes the unsworn declarations contained in the petition. *See Scimeca*, 169 B.R. at 542; *Moore v. Strickland (In re Strickland)*, 350 B.R. 158, 163 (Bankr. D. Del. 2006); *Spyra v. Finney (In re Finney)*, 333 B.R. 242, 250 (Bankr. W.D. Pa. 2005). Statements made when one is testifying at a proceeding such as a 341 meeting or when being deposed are also under oath, as are the assertions contained in certain court filings. *See* Fed. R. Civ. P. 30(b)(5)(A) (requiring that depositions begin with an on-the-record statement that includes the administration of an oath or affirmation to a deponent); *Office of the U.S. Tr. v. Zimmerman (In re Zimmerman)*, 320 B.R. 800, 807 (Bankr. M.D. Pa. 2005) (stating that debtor was under oath when he testified at the 341 meeting).

Here, there is no dispute that the statements and omissions made in the MORs were made under oath for the purposes of section 727(a)(4)(A). In fact, the MORs state the following: "I declare under penalty of perjury (28 U.S.C. [§] 1746) that the documents attached to this report are true and correct to the best of my knowledge and belief." S*ee Williamson*, 414 B.R. 895 (Bankr. S.D. Ga. 2009); *see also Schmidt v. Cantu (In re Cantu)*, 2011 Bankr. Lexis 526, at \*93-

15

98 (Bankr. S.D. Tex. Feb. 17, 2011) (denying discharge for misstating information in monthly operating reports in both related corporate and individual bankruptcies). Thus, the first element required to deny a discharge under section 727(a)(4)(A) is met.

### B.    False Statements

To deny a discharge under section 727(a)(4)(A), a plaintiff must establish that statements made by the defendant under oath were false. A "false oath" includes, among other things: (1) false statements or omissions in a debtor's petition and (2) false statements by a debtor at examinations held during the course of the bankruptcy proceedings. In addition, "[a] signature on a monthly operating report also implicates [section] 727(a)(4)(A)." *Durden Banking Co. Inc. v. McKinney (In re McKinney)*, 2012 Bankr. Lexis 1704, at *12 (Bankr. S.D. Ga. Mar. 5, 2012) (citing *Williamson*, 414 B.R. at 901); *Scimeca*, 169 B.R. at 542-43 (holding that a debtor's failure to list his interest in a business on his petition when in fact he was the company's sole stockholder and chief executive constituted a false oath); *Strickland*, 350 B.R. at 163 (explaining that a debtor's failure to list all assets owned can constitute a false oath or account); *Continental Bank v. Bobroff (Matter of Bobroff)*, 69 B.R. 295, 298 (E.D. Pa. 1987) (stating that section 727(a)(4)(A) has been applied to verbal false oaths).

The Mobile Dental account statements include a number of pre- and postpetition transactions, the vast majority of which appear to be personal expenditures. Yet, Dr. Beukas's MORs for the corresponding periods do not reflect the substantial disbursements made from the Mobile Dental accounts. Thus, Dr. Beukas's omission of these transactions constitutes a false statement for purposes of section 727(a)(4)(A).

### C.    Made Knowingly and with Fraudulent Intent[3]

A debtor's discharge will not be denied where the omission or false statement resulted from an honest mistake or mere inadvertence. *Spitko*, 357 B.R. at 312 (citing *Georges v. Solodky (In re Georges)*, 138 Fed. Appx. 471, 472 (3d Cir. 2005)). Rather, a debtor will be denied a discharge under section 727(a)(4)(A) only when his or her false oath was made knowingly and with fraudulent intent. A false oath is made "knowingly" where the statement is: (1) known by the debtor to be false; (2) made without belief in its truth; or (3) made with reckless disregard for the truth. *Id.* at 313. "A reckless disregard of both the serious nature of the information sought and the necessary attention to detail and accuracy in answering may rise to the level of fraudulent intent necessary to bar a discharge." *Zimmerman*, 320 B.R. at 811 (quoting *In re Mazzola*, 4 B.R. 179, 182 (Bankr. D. Mass. 1980)); *see e.g., Dolata v. Dolata (In re Dolata)*, 306 B.R. 97, 152-53 (Bankr. W.D. Pa. 2004) (finding that the debtor acted knowingly where the events in

---

[3] While the issues of whether a debtor's false oaths were made knowingly and with fraudulent intent are two separate considerations under section 727(a)(4)(A), much of the analysis regarding a debtor's knowing false oath applies "with equal validity" to the issue of fraudulent intent. *See Dolata v. Dolata (In re Dolata)*, 306 B.R. 97, 155 (Bankr. W.D. Pa. 2004). Thus, the factors are combined for purposes of this analysis.

question occurred recently before he filed his petition and thus he could not have forgotten to include them); *Randolph v. Somerville (In re Somerville)*, 73 B.R. 826, 832, 836 (Bankr. E.D. Pa. 1987) (noting the debtor's failure to provide an explanation for his omissions in denying a discharge under section 727(a)(4)(A)).

Because a debtor is unlikely to admit that his or her intent was improper, courts may look to circumstantial evidence and draw inferences from a course of conduct. *Scimeca*, 169 B.R. at 542-43. Moreover, a plaintiff demonstrates "fraudulent intent . . . if the debtor engaged in behavior which displayed a reckless and cavalier disregard for the truth." *Zimmerman*, 320 B.R. at 810-11 (citing *In re Dolata*, 306 B.R. at 149); *see also Continental Bank v. Bobroff (Matter of Bobroff)*, 69 B.R. 295, 298 (E.D. Pa. 1987) (finding recklessness where debtor failed to disclose his interest in certain assets and made contradicting statements concerning his ownership of an asset at a Rule 205(a) hearing and at trial). Recklessness can in turn be inferred, for example, where there is a series or pattern of errors or omissions on a debtor's petition. *Spitko*, 357 B.R. at 318; *see also The Cadle Co. v. Zofko (In re Zofko)*, 382 B.R. 45, 48 (Bankr. W.D. Pa. 2008) ("Multiple inaccuracies or falsehoods may rise to the level of reckless indifference to the truth, which is the functional equivalent of intent to deceive.").

While subsequent disclosures or amendments may rectify an honest mistake, such amendments will not expunge any fraud in the falsity of a statement. *Spitko*, 357 B.R. at 313; *Strickland*, 350 B.R. at 164 (finding that the amendment of the debtor's schedules to reflect her interest in a business did not negate the conclusion that the omission was intended to mislead or defraud her creditors). Indeed, fraudulent intent has been inferred despite a debtor's subsequent disclosure of omitted assets where such disclosure was "compelled" by the court or by fears that the omitted assets would soon be discovered. *See Strominger v. Giquinto (In re Giquinto)*, 388 B.R. 152, 181 (Bankr. E.D. Pa. 2008) (finding an absence of fraudulent intent where the debtor's submission of an amended petition was voluntary and not the result of fears that the omitted assets would be discovered); *Spitko*, 357 B.R. at 313 (explaining that a debtor's omission of an asset that is already known to the trustee or a creditor will not be excused even when the debtor belatedly discloses that asset); *Dolata*, 306 B.R. at 153-54 (finding fraudulent intent and denying discharge despite amendment because the subsequent disclosure was compelled by the court). In addition, where a debtor's underreporting or omission of assets is at issue, "no carelessness [can] excuse the Debtor's failure to amend his schedules promptly when he had the leisure to do so." *Zimmerman*, 320 B.R. at 810.

Here, Dr. Beukas signed the MORs despite the fact that he was aware they substantially misrepresented his financial condition and business activity. Though Mobile Dental, the entity, was disclosed on his bankruptcy petition, the relevant bank accounts were not. A cursory review of the Mobile Dental account statements reveals that the accounts were integral to understanding and evaluating Dr. Beukas's financial condition and business dealings. Dr. Beukas used the accounts on a regular basis for nearly four years before filing for bankruptcy relief. His failure to disclose this information is simply inexcusable. "The very purpose of certain sections of the law . . . is to make certain that those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs." *Zimmerman*, 320 B.R. at 811

(quoting *In re Schifano*, 378 F.2d 60, 66 (1st Cir. 2004)).  That the MORs were professionally prepared does not make Dr. Beukas's actions any less reckless.  At minimum, failure to disclose the deposits and withdrawals from the Mobile Dental accounts constitutes reckless disregard and thus, Dr. Beukas acted knowingly and fraudulently for section 727(a)(4)(A) purposes.

### D.  Material to this Bankruptcy Case

A denial of discharge under section 727(a)(4)(A) requires that a false oath be material to the administration of the bankruptcy case.  That creditors are harmed by an omission or false statement is not critical in determining whether a false oath is material.  *Scimeca*, 169 B.R. at 543.  Rather, "the subject matter of a false oath is 'material' and thus sufficient to bar discharge if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of [the bankrupt's] property."  *Spitko*, 357 B.R. at 312 (citing *In re Chalik*, 748 F.2d 616, 618 (11th Cir. 1984)); *see Scimeca*, 169 B.R. at 543-45 (finding that debtor's failure to disclose his ownership interests in two businesses was material because the omission "prevent[ed] creditors from having an opportunity to investigate the debtor's financial condition and prevent[ed] the trustee from evaluating avoidable transfers"); *see also Zimmerman*, 320 B.R. at 808 ("[T]here is little that will prove to be immaterial for purposes of required disclosure if it aids in understanding the debtor's financial affairs and transactions." (citing *In re Coombs*, 193 B.R. 557, 567 (Bankr. S.D. Cal. 1996))).

"Matters so trivial in nature as to have but little effect upon the estate and upon creditors have been treated as immaterial."  *Randolph v. Somerville (In re Somerville)*, 73 B.R. 826, 835 (Bankr. E.D. Pa. 1987) (citing *In re Woerner*, 66 B.R. 964, 972 (Bankr. E.D. Pa. 1986)); *see also The Cadle Co. v. Zofko (In re Zofko)*, 382 B.R. 45, 49 (Bankr. W.D. Pa. 2008) (finding omissions immaterial where they related to items of trivial value and accurate answers were located elsewhere on petition).  However, claims that undisclosed assets are of little or no value, or that one has no equity in undisclosed assets, will not excuse a debtor's omissions as immaterial.  *See Spitko*, 357 B.R. at 312-13; *Zimmerman*, 320 B.R. at 808; *Strickland*, 350 B.R. at 164-65 (noting value of debtor's undisclosed business but finding that "even if the [b]usiness had [] nominal value," it was material because it related to the debtor's business dealings).  Indeed, even assets of "seemingly worthless value" may be material to a bankruptcy case.  *Scimeca*, 169 B.R. at 545 (citing *In re Acuri*, 116 B.R. 873, 881 (Bankr. S.D.N.Y. 1990)).

It is not for a debtor to determine what is worth being disclosed and what is not.  Creditors "are entitled to judge for themselves from a true account of the facts, what will benefit and what will prejudice them."  *Legum v. Murray (In re Murray)*, 249 B.R. 223, 230 (Bankr. E.D.N.Y. 2000) (quoting *Morris Plan Ind. Bank v. Finn*, 149 F.2d 591, 592 (2d Cir. 1945)).

It is of no consequence that Mobile Dental is a separate legal entity as argued by Dr. Beukas.  Mobile Dental's legal form does not excuse Dr. Beukas from his duty to disclose

18

activity relating to his financial condition and business dealings.[5] The deposits and withdrawals made from the Mobile Dental accounts clearly bore "a relationship to the bankrupt's business transactions or estate, [and] concern[ed] the discovery of assets, business dealings, or the existence and disposition of [the bankrupt's] property." *Spitko*, 357 B.R. at 312. Thus, the omitted information was material under section 727(a)(4)(A).

When compared to the Mobile Dental account statements, it is clear that the MORs present a grossly distorted view of Dr. Beukas's finances. Also, the Court notes that the Mobile Dental accounts do not appear on the Beukases' bankruptcy petition. *See generally Williamson*, 414 B.R. at 900-01 (denying a debtor's discharge where he omitted his ownership interest in a business and its four bank accounts on his petition and monthly operating reports). Taken in conjunction with sections 727(a)(3) and (a)(5), there are ample grounds to deny Dr. Beukas the benefit of a bankruptcy discharge. Thus, the Court will grant Gvildys's motion for summary judgment as to Dr. Beukas.[6]

## VII.  Denial of Mrs. Beukas's Discharge

All allegations set forth in the complaint concern the alleged wrongful conduct of Dr. Beukas. Beyond signing the MORs, Gvildys makes no allegations directly against Mrs. Beukas. In fact, counsel admitted at argument that "with respect to Mrs. Beukas, I don't think that I can show that she knows that" money was improperly transferred from NJMDP to another account. (Hr'g Tr. Jan. 24, 2012, 20:9-17) Further, counsel conceded that he could not demonstrate that she had any control over the funds. (*Id*. at 20:18-25) ("*The Court*: You don't allege or can prove that she had control over the funds of . . . *Mr. Klausner*: Certainly not. Not given the evidence

---

[5] Dr. Beukas also asserts equitable defenses of unclean hands and judicial estoppel. Under the circumstances, however, these defenses do not apply. The Court will not permit a debtor to abuse the privileges provided by the Bankruptcy Code simply because a party seeking to bar his discharge may have acted dishonestly or with suspect motivation. *See Giant Eagle, Inc. v. Monus (In re Monus)*, 167 Fed. Appx. 494, 496 (6th Cir. 2006) (affirming appellate panel's decision that the doctrine of unclean hands does not apply in proceedings seeking to bar a debtor's discharge under section 727(a) because "unlike an inquiry under . . . [section] 523, which seeks to vindicate only a single creditor's debt, the inquiry in a proceeding under [section] 727(a) is directed toward protecting the integrity of the bankruptcy system by denying discharge to debtors who engage in objectionable conduct that is of a magnitude and effect broader and more pervasive than a fraud on a single creditor.").

[6] After the motions were briefed and argued, on June 22, 2012, Dr. Beukas pleaded guilty to tax evasion and bankruptcy fraud. Dr. Beukas pleaded guilty to a failure to report income of approximately $1.3 million on his Statement of Financial Affairs and knowingly and fraudulently concealed property of the estate, thus violating 18 U.S.C. §§ 152(1) and (2). (*See United States v. Beukas*, U.S. Dist. Ct. D.N.J., Case No. 12-cr-00432-RMB, ECF Docs. 1 and 2) According to the minutes of the proceeding, the plea agreement was approved and accepted by the District Court. (*Id*. at ECF Doc. 3) Dr. Beukas is scheduled for sentencing in September 2012. (*Id*.) Though under certain circumstances a plea may be withdrawn before a defendant is sentenced, *see* Fed. R. Crim. P. 11(d), the Court notes that a debtor's guilty plea to a charge of bankruptcy fraud may be conclusive in a section 727(a) proceeding. *See generally Gargula v. Petersen (In re Petersen)*, 315 B.R. 728, 733 (Bankr. C.D. Ill. 2004); *see also United States v. Summers*, 254 F. Supp. 2d 589, 593 (E.D. Pa. 2003) (applying collateral estoppel to a prior guilty plea).

that's available now.") Gvildys simply fails to adequately plead a claim against Mrs. Beukas under section 727(a). Thus, the cross-motion to dismiss is granted, with prejudice, as to Mrs. Beukas.

## **CONCLUSION**

Accordingly, Gvildys's motion for summary judgment denying discharge is granted as to Dr. Beukas pursuant to sections 727(a)(3), (a)(4)(A), and (a)(5). [7] The Beukases' cross-motion to dismiss is granted, with prejudice, as to the claims against Mrs. Beukas.

An Order in Conformance with this Opinion has been entered by the Court and is attached hereto.

/s/    *Donald H. Steckroth*

DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

Dated: July 24, 2012

---

[7] Though Gvildys's complaint alleges additional causes of action under sections 727(a)(2) and (a)(7), the Court makes no finding as to Dr. Beukas's liability on those counts of the complaint.